Case number 20-5364, Electronic Privacy Information Center, Jason Leopold and BuzzFeed Inc. Appellants v. United States Department of Justice et al. Mr. Topic for the Appellants, Mr. Ross for the Appellees. Mr. Topic, good morning. Good morning all, Matt Topic for Jason Leopold and BuzzFeed. May it please the court, the government is withholding not only the names of Trump campaign officials who were investigated by the special counsel's office and not charged, but also the justification for those decisions, claiming that this info information shows nothing about what the government was up to. I'd like to focus on why the privacy rights are diminished, at least briefly, and focus the public interest analysis on this court's decisions in the crew cases. This court has held repeatedly that privacy rights are diminished where the government has already disclosed the fact of a person's involvement in alleged criminal activity. And here the government affirmatively argues, quote, in fact, information about the potential criminal conduct of these uncharged individuals has already been disclosed. Unlike the material in Bast, the report is an authoritative confirmation that these individuals were investigated and not mere journalistic speculation. And as a result, the privacy rights are diminished. That takes us to the public interest analysis under crew and crew recognizes several variations on a similar public interest. First, it talks about how prosecutors carried out substantive law enforcement policy and exercise their discretion. It discusses whether the government had the evidence, but nevertheless pulled its punches and whether prominent and influential officials were subjected to the same prosecutorial zeal as other people. And as to that last point, while it is true that crew was discussing public officials, it's a very short step from public officials to people in the inner circle of a presidency and people who were involved high up in a presidential campaign. What's your authority for that? I think it's really the logic of why the court reached that decision. How about case authority? So there are several cases that at least suggest that the public figure nature of the person involved can diminish their authority. I thought we were talking about non-public officials. So we don't know specifically whether these people are or are not government officials. So let's assume for the sake of argument, and I think it's clear from the context that many of them are not government officials. They were campaign officials. So the concern in crew... They were... I don't know why you call them campaign officials. They were private individuals. We either have public officials or private individuals. So I think if we look at the reasoning in crew, the concern was that certain people might not be prosecuted or investigated with the same prosecutorial zeal as lesser known people. There was one public figure in there, Tom DeLay. Correct. There were no private citizens. That's correct, Your Honor. The point I'm making is that the concern that Tom DeLay might not be prosecuted with the same zeal as a lesser known person, as this court articulated in crew, is every bit as much true if the person is a member of the president's inner circle and might even be the president's son. The public's concern that those people might be treated differently by prosecutors than lesser known people, that was the concern as to that variety of public interest that the court discussed in crew. So you're correct that the case does not hold that that doctrine can be applied to people who are not public officials, but the reasoning would apply every bit as much here as it would if these people were public officials. That said, that's one of three different concerns that the court articulated in crew, and that discrepancy or that issue doesn't bear on the two other forms of public interest in crew that are very much served. The material here is both the names of people investigated and the actual declination analysis. So if we look at the passages that have been withheld, there are a number of declination decisions for false statements that are entirely redacted. We do not know anything about how the special counsel's office reached that decision. There's a section 1030 charge for computer intrusion where we know that the special counsel found that there was sufficient evidence to charge that person with a misdemeanor, but in the exercise of prosecutorial discretion elected not to do so. But all of the facts in that discussion have been redacted, making it exceedingly difficult for the public to understand how that decision was made. Do you agree that if there are situations in which there's redacted material, you're arguing the diminished interest as being terribly important in this case, but what about a situation in which the redacted material may refer to someone who's been identified in the public released papers, but there are different facts with respect to those persons that have not been identified? In that instance, this court's precedent would hold and has held that there remains a privacy interest for those additional facts, but the privacy right is diminished. And so we need to look at the public interest served by the disclosure of those additional facts. And if those additional facts are not elsewhere disclosed, it undermines the government's argument that we don't need any more information because we've already been told everything that matters. And if there are additional facts that haven't been disclosed and they bear on the exercise of prosecutorial discretion, then we get into the public interest under crew. And if that information would show what the government was up to, it would show how prosecutors exercise their discretion. It would show whether the prosecutors had the evidence and pulled the individual may have very strong privacy interests with respect to certain facts that have not been released and that might bear on the declination of decision. And what's your public interest in saying we're entitled to get that? Speculation might be grand jury, appearance before a grand jury, such things. Why do you think under the case law, you're entitled to that where there hasn't been any release of certain facts supporting what was done with respect to certain individuals? In crew, this court looked to whether individuals had previously been implicated in the investigation and then said, for those individuals, we're going to use the analysis under crew and whether it would show the exercise of prosecutorial discretion, et cetera, and not require showing under safeguard or under fabish or under fund for exceptional interests. So that's how... Sorry. Go ahead. Finish your answer. I just have a follow-up question. Finish your answer. Go ahead. I've lost my train of thought a bit. Apologies. Let me just follow up with what Judge Edwards is asking. So if you look at the unredacted report, there's a big difference between what's in those reports about the charging decisions regarding campaign offenses and those for false statements. There's a whole lot of information in the reports about the former, about the campaign related in the unredacted versions of the report, hundreds of pages, right? It's hundreds of pages about Russia's hacking activities, the links between Russia and the Trump campaign. But with respect to, as Judge Edwards pointed out, with respect to the false statements, there's absolutely no information in the unredacted report. And not only that, but the latter offenses were committed during the grand jury proceedings, not like the campaign offenses during the primary offenses that the special prosecutor was looking at, special counsel was looking at. So sorry to go on so long, but to me, those two categories seem quite different. The campaign related offenses and the false statement ones seem quite different to me in terms of the public-private balance. What's the matter with thinking of it that way? And we do not argue that every bit of information is precisely the same analysis. We obviously have not seen the unredacted report. So then let's just pursue that for a minute. So take, for example, the false statements cases. What's the possible argument for ordering those unredacted? There's no information in the that would be, that would be releasing charges about people who have not been indicted, not been charged, facts about their behavior that have not been. It sounds like, I mean, it sounds like, yeah, we would be revealing a huge amount of information. Well, I can't say a huge amount, but a lot of information about people who have not been charged was that's not the case with the campaign offenses. So how do you do the public balance in that case? Well, if there is nothing that's been disclosed by the government showing that those particular individuals were investigated and let's even say investigated specifically for false false statements, then I think under crew, we would be looking at, you know, either an analysis under or the exceptional interest standard under fund. And that takes us then to the analysis. And we have a situation in which the president of the United States has repeatedly said that this was an illegal political witch hunt. Okay. I mean, I just want to drill down on this thing, the type of conduct I'm thinking about with the false statement thing kind of reminds me of, judicial watch and the other cases we have where we focused on the danger, the danger of disclosing unproven allegations against people who were never charged. That's this category. I think judicial watch is distinguishable for several reasons. And in fact, the information withheld here, which is the official discussion by the office, as opposed to staff written draft indictments, the fact that this is the actual analysis as opposed to a draft indictment with no explanation. Those are facts that distinguish that information here from the information in judicial watch. And in fact, the information here is like, I agree that the facts are different, but isn't the principle the same? The principle, again, it is the same, whether they're allegations from investigators or allegations from the special counsel. I'll just repeat what the case says. The danger of disclosing, of disclosing unproven allegations against people who were never charged, whatever the source of the allegation, that's the problem with the false statement claims, not the campaign ones. I'm separating those. I think the report here is like the report that a special division of this court allowed released in the judicial watch case or in the Clinton investigation, which was the explanation of what had been investigated, what was being charged and what wasn't being charged. It is much more like that than it is like the draft indictment, because this court held that Mrs. Clinton was without the benefit of any explanation from the independent counsel about what were these draft indictments, why were they drafted and why were they not filed? And what is being withheld here is exactly that. It is the explanation from the special counsel's office as to why it decided not to bring charges against these individuals. What about the other distinction I made? What about the fact that the false statements, in terms of the public interest, the false statements were made to the grand jury, and, you know, their false statement to a grand jury, that's, I don't mean to undermine, minimize the seriousness of it, but those are a lot less serious than the basic offenses that the special counsel was, was investigating in terms of campaign violations. Isn't that the public interest is less about what the offenses were, it's more about and exclusively about how did the special counsel go about its business in deciding that it would or would not bring the public's need to know, public obviously has a lot stronger need to know about the about Mr. Mueller's reasoning in connection with the core of his case, namely, the campaign violations and the computer violations, then, then with respect to the fact that a couple of witnesses may or may not have lied to the grand jury, a couple of witnesses who may not have been involved in the couple of other witnesses who may not have been involved in the, in the campaign issues, but were nevertheless questioned by the grand jury. Isn't that a big difference for the public interest? I mean, the seriousness of the fact that we cannot understand how those decisions were made is a core public interest under section 7C and from what the court has described here. But you agree, you agree in terms of the public's need to understand what was going on. It relates considerably to the, to what the public already knows, right? And to the position of the people involved, correct? Those are relevant factors, but it ultimately comes down to, would this information allow the public to understand how important decisions were made by the special counsel's office? What happens if we look, if we look at these materials in camera and find no evidence of government misconduct at all? That would matter under the, well, first under Favish, the evidence of potential government misconduct need not come from the report itself. Under Crewe, there need not be any showing whatsoever of any government misconduct. That's expressly what this court held in Crewe, that it's the, it's the public, it's the public interest in understanding how prosecutorial discretion was exercised in, in whether punches were pulled, independent of any showing of wrongdoing under Favish. If there's no further questions, I'll reserve the remainder of my time. All right, Mr. Ross. You need to unmute yourself, Mr. Ross. Apologies, that should work. Okay, go ahead. Thank you, Your Honor. Kason Ross for the Justice Department. Following a careful review of the information at issue, both in camera and following an ex parte hearing, in addition to a number of to questions posed by the district court itself, the court upheld the government's withholding of names and other personally identifiable information of individuals that the special counsel's office declined to prosecute. That was correct, and this court should affirm. The public interest of the disclosure of this information is far outweighed by the privacy interests of these particular individuals. I don't know how you can say that with respect to a number of individuals who clearly have a diminished expectation of privacy, because they've already been discussed in the, in the public document. Their names have been revealed, they are clearly a part of whatever was going on. The facts about them have been revealed, as distinguished from the question I gave to the other counsel. In situations where that is true, and you have redacted the explanation for the government's decision, I don't understand, even under judicial watch, why that wouldn't be releasable material. Situations where it's clearly a diminished, it's got to be a diminished expectation of privacy. Your name is public, it's clear, and the facts about you have been revealed. They're not hidden. We're not talking about a situation where they're new and additional facts. The facts have been revealed, and the only that's missing that you've redacted is the explanation for why the government took the position it took in the report. Two responses, your honor. First is that there's a material distinction between being involved with the investigation itself versus having charges contemplated against an individual. That is, and that's a salient distinction here. The appendix D of the report lists a number of individuals who were involved in the special counsel's investigation, and that is certainly public knowledge that many of those individuals were interviewed or their acts contemplated as part of that investigation, but that is a completely separate privacy interest as concerns prosecutorial declination decisions. This court has repeatedly held that a privacy interest or an individual's privacy interest is at its apex when a conviction or, excuse me, charges are contemplated against an individual, but not subsequently brought. The end, in fact, judicial watch arguably points in the opposite direction, where in that case, this court discussed Secretary Clinton's, in fact, augmented privacy interest with respect to an incredibly high-profile investigation, further disclosure of which would, in fact, impede her own privacy interests, such that disclosure was not necessary in that case. The same is true here. In fact, not only is there a salient distinction between investigation versus an actual prosecution contemplation, but this court has also made a distinction between individuals who were actually charged versus those who were not convicted. In the crew cases, this court explicitly suggested that individuals who were not actually charged in association with the Tom DeLay investigation, their names or personally identifiable information need not be disclosed. The same is true here. The individuals who are named in the report on the five pages that are at issue here have a substantial privacy interest in essentially being let be, and for that information not being disclosed. Plaintiffs here haven't... The problem is you have the case law that says the public has a right to understand what the government has done and why, and with respect to individuals who have been clearly identified and with respect to the facts about them that are already in the public record, the only thing we're talking about now is why did the government reach the conclusion it reached, and there is plenty of case law that suggests in that situation, if that's what you're talking about, that should be disclosed, because there is a diminished interest in privacy in that the individual has been identified. The facts with respect to that individual are in the public record, and the only question is whether or not the government's explanation for the decision it's made has been removed, and that was one of the things we said with respect to Hillary Clinton. She had that, and with the assumption that the argument certainly can be made, so we would assume that a person is entitled to get that, and the crew cases certainly suggest that someone seeking the information on the floor is entitled to information of that sort where the person has been already revealed. Again, two responses, Your Honor. First, the colloquy that Judge Tittle had with my opposing counsel suggests that there is actually new information in the redacted material that implicates those individuals' privacy interests involving... No, no, no. I'm not talking about that situation. That was the first question I asked opposing counsel. If we're talking about new factual information... So the other... By the way, counsel, I was only talking about one category of those charges, namely the false statement ones, not the campaign ones. It seems to me that Judge Edwards' questions go straight to heart of those. All that information, everything is... All of the facts surrounding that... Are in the public record. Hundreds of pages in the Mueller Report are about that. And the only thing that's missing is the explanation as to, are the government... And that's essentially what this fight is about. I respectfully disagree, Your Honor. The... Well, you disagree with what? Disagree about what? You disagree with what? I think what information we're referencing here. So if the section of the Mueller Report detailing possible links between the Trump campaign and the Russian government is JA 636 to 743, which concerns the campaign violations, I think that... Or possible campaign violations that you were describing. The information at issue here is not in that section of the report and goes to different possible legal violations. But I think that the more important point that I was going to make in response to Judge Edwards is that releasing the information here would be an authoritative confirmation that possible charges were contemplated against these individuals. This court in Kimberlin said as much that with respect to charges contemplated against a federal prosecutor or in Bast, against a federal judge, that... Excuse me, Your Honor? That possible... Excuse me. The government's release of information that would confirm whether a prosecution decision was contemplated against those individuals is again, a material distinction and relevant to that individual's privacy interests, such that the government could withhold the names and other personally identifiable information that concerned those... I just... I was frozen out. I'm not sure how much I lost. I'll go ahead and listen and see whether there's something I'm missing. Sure. I was just referencing this court's decisions in Kimberlin and Bast, Your Honor, where this court explained that the authoritative confirmation provided by releasing names is an additional calculus to consider for an individual's privacy interest. That's the statement I was making. Additionally... I just don't understand what you said about two minutes ago. I mean, with respect to the campaign violations, the Russian links and all that, the report already tells us who these people are, the fact that they were investigated, right? And the details. The only thing we don't know, the only thing the public does not know is the counsel's, prosecutor's reasons for not indicting. And so... And if it doesn't know that, how can the public possibly know whether the government, as they say in one of our cases, quote, matters? Hundreds of pages. The one thing the public needs to know, it doesn't know now, because the one thing that's not there is the prosecutor's reason. So, to the extent there is a concern that the special counsel Mueller pulled his punches, again, I'll refer to you to Appendix D, which lists a whole host of prosecutions that the special counsel's office referred to other offices for further investigation. These prosecutions, they're not related to these cases. So, to the extent their court is concerned in that respect, I urge you to review the report in camera, which we have provided for the court's review. Additionally, plaintiffs have provided no reason to suspect that the prosecutor here pulled his punches. There's no evidence suggesting that anyone in the special counsel's office acted improperly, which would provide reason for They don't have to prove that. It's not a question of proof, Your Honor. It is. They can rest on the argument that in certain circumstances, the public is entitled to know. The public is entitled to understand how the government operated. See, that's one of the baselines you want to conveniently ignore. That's what some of the cases are saying. Public is entitled to understand what went on, and especially where there's diminished expectation of privacy, as there is here with respect to a number of individuals who are all over the public record, and we know a ton of facts about them, and the only thing we don't know is what the case law says you're entitled to know is. So, how did the government reach the conclusion it reached, given all the information that we're looking at, so that we, the public, can think about it? The Supreme Court explained in Favis, Your Honor, that rather a clear I'm not talking about misconduct. You're misreporting this rationale that says the public is entitled to understand. What the government is up to, absolutely, but there's no I'm not on the assumption that it was good, bad, or otherwise. You're entitled to understand what's going on in our democracy, why certain decisions were made in light of all this information which we're looking at now, and some are scratching their head thinking it's easy, some are scratching their head thinking it's hard, and we don't have an answer, and the case law suggests that you have to provide that answer where there's a diminished expectation of privacy. So, in this context, Your Honor, it's worth considering the amount of information that the government has already disclosed, both in the Mueller report and the Congress has released, with respect to the facts surrounding this investigation. Let me make it very clear what I'm saying. What's missing here, at least in my review of the cases, and I have looked at the materials, the one crucial thing that's missing here, and Judge Tatel and I seem to have been focusing on the same thing we haven't talked before, is the bottom line. So why did you do what you did? All the other facts are there, but you can't win any points by saying, but all the facts are there, and then say, we get a lot of points, and we therefore don't have to explain to you why we did what we did. That's not what the case law says. In fact, the case law says quite the opposite. But in those circumstances, Your Honor, because the Justice Department determined that there is an interest in disclosing much of the information here, it is worth noting that the Special Counsel's report is traditionally a confidential document disclosed to the Attorney General solely for making prosecutorial decisions and declination decisions. But obviously, the Attorney General determined that it was in the public interest to release much of this information, but that seeds in the very limited information that's issued here to those individuals' privacy interests. And the Independent Counsel decided that it made sense to do it in part because the Independent Counsel announced that the Attorney General's explanation of the report was not accurate. All the more reason the public has an interest in seeing what's in the report when there is the diminished expectation of privacy. So you've released all these facts. The Independent Counsel said, wait, the Attorney General's explanation of what we did is not accurate. So the public has a whole lot of facts. And the only thing you don't have for the public is, well, how did you reach the conclusion you reached? That's not quite right, Your Honor. Which is not quite right? That the Special Counsel disagreed to some extent. Well, we both know the passage. I was merely going to say that the process by which information was withheld from the public here and other redactions in the report itself, that was done by the Justice Department's Office of Information Policy in partnership with the Special Counsel's office. What I'm talking about is the public's need for understanding, which is consistent with some of what the case law says. The public's need for understanding is really high here. The President is saying it's a scam. It's a fraudulent situation. The Independent Counsel is saying the Attorney General's report on our report is not accurate. And we're releasing lots of information. We're just not going to tell you why we did what we did. That makes no sense to me in light of the case law that I've been reading. That makes no sense when you have that combination of circumstances. 50% of the people believe, that's what the appellants have put in the record, believe some of what the President was saying with respect to this being a sham procedure. That's exactly the kind of situation where the public interest is very, very high, it seems to me. But in this very small circumstance in which the information that's withheld is quite limited and specifically tailored to individuals' names and personally identifiable information, their privacy interests must outweigh the public interest in... The names are already released. Yeah, the names are out. The names are out. We're not talking about either names that have been withheld, nor are we talking about cases where there are new facts that are not in the public record. I have distinguished those categories. They're different cases. I'm talking about situations where the names are released and all the facts about those individuals have been released, and the only thing that's not there, which is what Judicial Watch says, Clinton had, the expectation being it would occur in any case, is why the government took the action they did. But in these circumstances, Your Honor, individuals have a substantial privacy interest in not being associated with possible charging decisions. Traditionally, if the person... There would be a court of law in which due process attaches to the individual such that they can defend themselves and clear their reputation and name in impartial proceedings. If the information is disclosed here, there would be no similar opportunity. These individuals would simply be named as having charges contemplated against them, but then in the special counsel's... That makes sense to me with respect to the category of false statements, but not the campaign ones as both Judge Edwards and I have pointed out. All the information about that and the names are spread all over the report. But let me ask you this. You said in response to one of our questions when we were asking how the public would know, you said there's been enough released in any event for the public to know, to understand why the special counsel didn't prosecute. In other words, to judge the prosecutor's decisions in this case. So let's just take an example, okay? The section 1030 violations, just take those for example, okay? Show me where in the report that the public would be able to assess whether that particular declination decision was well-founded. Where would I find that? So I believe it is isolated. I don't believe it is described in other circumstances. Right, that's the whole point. It isn't there. But I think the public's interest in understanding whether the special counsel's office pulled its punches with respects to that single possible charge is quite limited and is essentially limited to, as this court said in Schrecker, the name in a law enforcement investigatory file. And public's interest in that circumstance is minimal and is actually far outweighed by that individual's privacy interest with respect to that possible charge. There is no compelling reason that the public would be interested in that single isolated contemplated charge in which there is a huge volume of information already available for the public to determine whether the special counsel acted properly. And plaintiffs have provided no evidence to suggest there was any improper conduct here. They don't have to. I respectfully disagree, your honor. No, they do not. The case law does not say in every situation they have to be able to show an impropriety. You really are misstating the law and it's really unfortunate because it's a piece of the law that very much about how our democracy works. And let's not undermine it. The public has a right to understand what's going on in the government. And those who are seeking information that they're entitled to get don't have to prove or even claim that someone committed wrong here. You know, the public has a right to be interested when the president says this is all a sham. And 50% of the public agreed with that. Well, there's a serious question in our democracy. How do we answer that question? We look to see what the government's answer was for the action that it took. That's what the cases say. And, you know, even you yourself cited Favish and Favish says, it says, all it says is, it says it's a particular disclosure. If evidence would warn a belief by a reasonable person. Right. The alleged propriety might occur. And here we have the former president of the United States repeatedly accusing the special counsel of bias and impropriety. And we have the special counsel and the attorney general arguing that the other misrepresented each other. I mean, wouldn't you think that a reasonable person would worry about whether there was an impropriety here? I think to respond to this requires two responses, your honor. I think for one, it's worth considering exactly the very minimal information that's at issue here, which was not implicated in either the president's statements or in the conversation. I guess you could call it a conversation or the competing letters between special counsel Mueller and the attorney general that didn't implicate the very discreet declination decisions that's implicated by the information withheld here. Rather that is on five separate pages of the report in the context of over 450 pages of material that was not implicated by those statements. I just have a little technical, I'm sorry, were you going to, you go ahead. Sure. I was just going to say, let me, let me interject something here. First of all, I completely disagree with my colleagues that we can consider either political bombast or media hyperbole as supporting a reasonable belief. I don't believe there's a case anywhere that says that constitutes evidence in a court of law. But I'd like to ask you about Judge Walton with respect to the 7C exemption, which is what we're talking about, simply says on page 266, because the plaintiffs have failed to satisfy their obligation to show that the requested information advances the public interest in the disclosure of such information. He does not very coarsely relied on it at the summary judgment stage. He does not discuss this law enforcement policy, public interest that was so thoroughly discussed in Crewe. Now, what, what I'm hung up in this case is that we're dealing with private individuals and Crewe was one of the, involved one of the most powerful or significant public officials at the time. So what I'd like to ask you is, if we sent this back to Judge Walton to consider specifically per Crewe, the law enforcement policy, public interest that does not require any wrongdoing or allegation of any wrongdoing, what would be your position with respect to these are private individuals that he'd be applying that to? So because they are private individuals, they do have a substantial privacy interest with respect to the information that's been withheld here, your honor. And in those circumstances, there was less of a public interest in understanding what the quote government is up to, as opposed to, for example, this court institution in the nation magazine, in which the, in that case, the plaintiff had sought records concerning possible privatization of government drug interdiction efforts. There's no similar demonstration of the public's right to understand exactly what the special counsel's office or the decisions the special counsel's office took with respect to these particular private individuals. Here, it's the public's right to know is minimal because it concerns, as your honor stated, private individuals who did not serve public functions. All right. Are there any more questions? I just have a technical question. All right. Mr. Ross, I did look at the redacted. I did look at these and I noticed that that some of the materials are marked. I'm talking about in the false statement and obstruction offenses here. Some of them are marked B3-1. That's grand jury material, at least, isn't it? I'm looking at the material right now, your honor. I don't believe that the information that's, oh yes, B3-1 is grand jury material. So, but you didn't say anything about that in your brief. Do we have to worry about that some of this might be grand jury material? I had the same question and I was surprised we saw nothing. Yeah. It's right there, B3-1. Correct. So, some of the material has been withheld for a number of reasons. A number of FOIA exemptions was applied to each sum of the information at issue. Of course, plaintiffs have only challenged exemption 7C. So, to the extent that another FOIA exemption would apply to that material, were the court to reverse the distribution. I mean, it would have been helpful if you said something in your brief about that. I mean, if you just read your brief, the view from the brief is, okay, we just have to resolve the FOIA exemption question. And if we disagree with the government about the FOIA exemption, then the material has to be released. But then, but that's not true, right? Because some of this is grand jury material, correct? Yeah, that's correct, Your Honor. I'm- So then, it would have been really helpful if you told us that. We were simply responding to the arguments raised in Plaintiff's opening brief. So, my apologies. The plaintiffs asked for this material to be unredacted. Don't they? I believe they- That's the relief they want. They want the material unredacted. Correct. And so, you never said in the brief, I mean, if we hadn't looked at these in camera, we might have issued an order requiring them to be unredacted, not having any idea that they're grand jury materials. So, I'm just reviewing the material right now, Your Honor. And it looks like the information that was withheld under Exemption 3 is limited to one particular passage. Okay. So, your position is even if we disagree with you about the FOIA exemption question, that particular passage can't be unredacted because it's grand jury material, right? That's correct. Okay. Thank you. All right. Mr. Topic, why don't you take two minutes and answer any questions? Sure. I can clarify the grand jury point. If we look at JA 769, these are a series of false statement declination decisions. For some of those statements, the government asserted B3 for grand jury over the content, and we have not challenged the grand jury redactions. So, those particular passages, even if the court agreed with us on everything, would remain unredacted. Other ones of those false statement declination analyses are only withheld based on the privacy exemption or also on the B5 exemption, which has since gone away. The judge ruled against the government and they did not challenge it. All right. Thank you. Thank you for that. Just briefly, on the false statement points, we were working from the government's response, which said that information about these individuals had elsewhere been disclosed. If that is not the case, then I would just ask that the court take a close look at whether there is at least some information about the false statement charges that can be released that would shed light on how the decision was made without revealing who the person was. So, there may be a way to do that. There may not. But I think there could be something useful to the public that would not implicate those privacy concerns. And then, on the public figure question, I didn't have a full answer. In the first time around, there are a couple of cases. The Ross Perot case, which is Nation magazine, he was a candidate for diminished privacy interest. It is absolutely correct that no case has yet held that, but that door is at least open. Ultimately, I don't know that it's going to matter because, regardless of who the person is, the information that would shed light on how these decisions were made is at the core of the FOIA public interest. Well, not at the total abandonment of privacy interests. Correct. But to the extent the privacy rights have been diminished, and the information goes to the core of FOIA's purpose, then the public interest would outweigh the privacy interest. I mean, you could always, in a situation like this, find that there's going to be some invasion of privacy. Because if there wasn't, it would mean the information's already known, there's nothing new to be learned, and so no public interest would be served. And so, you can't really get to the crude public interest analysis, which this court described as weighty, without recognizing that there may be at least some amount of invasion of privacy, albeit a diminished one. All right. Any more questions? Thank you. All right. Thank you.
judges: Henderson, Tatel, Edwards